## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION AT COVINGTON

*Electronically Filed*

**PLEASANT VIEW BAPTIST CHURCH,**                    :        Case No.
**PLEASANT VIEW BAPTIST SCHOOL,**
**PASTOR DALE MASSENGALE,**                          :

**VERITAS CHRISTIAN ACADEMY,**                       :

**HIGHLANDS LATIN SCHOOL**                           :

**MARYVILLE BAPTIST CHURCH,**                        :
**MICAH CHRISTIAN SCHOOL,**
**PASTOR JACK ROBERTS,**                             :

**MAYFIELD CREEK BAPTIST CHURCH,**                   :
**MAYFIELD CREEK CHRISTIAN SCHOOL,**
**PASTOR TERRY NORRIS**                              :

**FAITH BAPTIST CHURCH,**                            :
**FAITH BAPTIST ACADEMY,**
**PASTOR TOM OTTO,**                                 :

**WESLEY DETERS, MITCH DETERS,**                     :
On behalf of themselves and their minor
children **MD**, **WD**, and **SD**,                 :

**CENTRAL BAPTIST CHURCH,**                          :
**CENTRAL BAPTIST ACADEMY,**
**PASTOR MARK EATON,**                               :

**CORNERSTONE CHRISTIAN SCHOOL,**                    :
**JOHN MILLER,** on behalf of himself and his
minor children, **BM, EM, HM**                       :

**AUSTIN AND SARA EVERSON**, on                      :
Behalf of themselves and their minor children
**QR, WK, TK, AE, EE, EO, and AE2,**                 :

**NICOLE AND JAMES DUVALL**, on behalf of            :
themselves and their minor children,
**JD, KD, VD, JD2, AD, RD, JD3, AD, CD,**            :

**LEE WATTS**,        and                            :

1

**TONY WHEATLEY**,                                      :

    **Plaintiffs**                                      :

v.

                                    :

**LYNNE M. SADDLER**
*In her official capacity*                                      :

**ANDREW BESHEAR**                                      :
*In his official and individual capacities*

## PLAINTIFFS' VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE RELIEF, AND DAMAGES WITH JURY DEMAND ENDORSED HEREON

Plaintiffs Pleasant View Baptist Church, Pleasant View Baptist School, Pastor Dale Massengale, Veritas Christian Academy, Highlands Latin School, Maryville Baptist Church, MICAH Christian School, Pastor Jack Roberts, Mayfield Creek Baptist Church, Mayfield Creek Christian School, Pastor Terry Norris, Faith Baptist Church, Faith Baptist Academy, Pastor Tom Otto, Wesley Deters, Mitch Deters, on behalf of themselves and their minor children, MD, WD, and SD, Central Baptist Church, Central Baptist Academy, Pastor Mark Eaton, Cornerstone Christian Church, Cornerstone Christian School, John Miller, on behalf of himself and his minor children BM, EM, and HM, (collectively the "Christian School Plaintiffs"), and Plaintiffs Austin and Sara Everson, on behalf of themselves and their minor children QR, WK, TK, AE, EE, EO, and AE2 and Nicole and James Duvall, on behalf themselves and their minor children JD, KD, VD, JD2, AD, RD, JD3, AD, CD (collectively the "More Than 8 Member Family Plaintiffs"), and Lee Watts and Tony Wheatley (collectively the "Political Gathering Plaintiffs") for their Verified Complaint *for Declaratory, Injunctive Relief, and Damages* (the "Complaint"), state and allege as follows:

## INTRODUCTION

1.  This action involves the deprivation of Plaintiffs' well-established First and Fourteenth Amendment rights by the official capacity Defendants and individual capacity Defendant named herein.  Specifically, this action is in response to the unconstitutional actions by the official capacity Defendants herein in shutting down all private, parochial schools in the Commonwealth, allegedly due to COVID-19 (the disease caused by the Coronavirus).

2.  This unconstitutional action is particularly shocking because: (1) U.S. Center for Disease Control ("CDC") guidance and CDC official statements confirm that school shutdowns are not recommended,[1] (2) schools have not been proven to be places of transmission for COVID-19 and, in fact, in-school attendance has been proven to be safer for both children and their communities than having those children remain at home with aging grandparents or other vulnerable family members, and (3) in-person instruction is far preferable from a learning perspective.[2]

## JURISDICTION AND VENUE

3.  Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this action is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C.

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/index.html (last visited 11/20/2020).

[2] https://www.washingtonexaminer.com/news/school-is-safest-place-for-kids-to-be-cdc-director-says (last visited 11/20/2020). https://www.c-span.org/video/?c4924557/cdc-director-redfield-data-supports-face-face-learning-schools&fbclid=IwAR1Kp3HKvUhZu8CJ1F8tGSISsMtnP0zNDJ3598kSC7sYffb6kDjhKS90zC0 (last visited 11/20/2020) (CDC Director confirming that all existing data demonstrates K-12 schools are not transmission pathways for the virus, in part due to safety protocols in place in schools).

§1331, 28 U.S.C. § 1343, 28 U.S.C. 1367, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

4. Venue in this District and division is proper pursuant to 28 U.S.C. §1391 and other applicable law, because much of the deprivations of Plaintiffs' Constitutional Rights occurred in counties within this District and division, within Kentucky, and future deprivations of their Constitutional Rights are threatened and likely to occur in this District. Furthermore, the first named Defendant is located in this division.

## The Defendants, and their activities and COVID-19 orders

5. Defendant, Lynne M. Saddler is the District Director of Health for the Northern Kentucky Independent Health Disrtict.  Among other things, she is charged with, and as explained herein, actually enforces, the mandates that are challenged in this action.  Specifically, her department enforces and has threatened enforcement of the challenged mandates against the Duvall facility as respects their family gatherings and the Deters family insofar as the private religious school is concerned.

6. Defendant Hon. Andrew Beshear is the duly elected Governor of Kentucky.  He is sued in his individual and official capacities.

7. Among other things, Governor Beshear enforces and is charged with the enforcement or administration of Kentucky's laws under KRS Chapter 39A, KRS Chapter 214 and KRS 220, including the orders and actions complained of herein.

8. In March, 2020 and in the weeks that followed, Governor Beshear issued a number of restrictions related to COVID-19.

9. On March 19, 2020, Governor Beshear implemented an outright ban on religious gatherings across the state. Specifically, Governor Beshear, acting through Secretary Eric Friedlander of

the Cabinet for Health and Family Services, issued an order stating that "[a]ll mass gatherings are hereby prohibited."

10. In the March 19, 2020 Order, Governor Beshear broadly described the scope of his prohibition as including "any event or convening that brings together groups of individuals, including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities."

11. Thus, the order, while very broad, specifically banned "faith-based" gatherings by name. The order did not define mass gatherings merely based on the number of people coming together, nor did it narrow its prohibition to the kind of indoor or closed-space gatherings that increase the risk of community transmission of the virus.  Rather, Governor Beshear's March 19, 2020 Order broadly banned any activity "that brings together groups of individuals," which specifically included any and all "faith-based" gatherings.

12. However, in an exercise in unconstitutional word play, and due to an unconstitutional value judgment, the order carved out purely secular activities from the scope of its prohibition. Specifically, the order went on to state that "a mass gathering does not include normal operations at airports, bus and train stations, medical facilities, libraries, shopping malls and centers, or other spaces where persons may be in transit."

13. The order also stated that a mass gathering "does not include typical office environments, factories, or retail or grocery stores where large numbers of people are present, but maintain appropriate social distancing.".

14. Thus, under the March 19, 2020 Order, mass gatherings with a faith-based purpose were expressly singled out for prohibition, while mass gatherings of secular organizations and

5

their activities were not—even when those secular activities involved large numbers of people.

15. On Good Friday, two days before Easter Sunday, Governor Beshear held his daily press conference. During his presentation, Governor Beshear announced that his administration would be taking down the license plate numbers of any person attending an in-person church service on Easter Sunday. Then, he said, local health officials would be contacting each person and requiring a mandatory 14-day quarantine. Under Kentucky law, violation of such an order is a misdemeanor punishable by criminal prosecution. See KRS 39A.990.

16. On Easter Sunday, Governor Beshear acted on his unconstitutional threat. Kentucky State Police troopers, acting on Governor Beshear's orders, traveled to the Maryville Baptist Church to record license plate numbers of those attending the church's Easter service. The troopers also provided churchgoers with written notices that their attendance at the service constituted a criminal act. Afterward, the vehicle owners received letters ordering them to self-quarantine for 14 days or else be subject to further sanction.

**In two stunning, Saturday Injunctions Pending Appeal, the Sixth Circuit repeatedly rebuked Governor Beshear's religious discrimination, creating clearly established law on the issue. Further, the Governor has infringed on other fundamental liberties**

17. On Saturday, May 2, 2020, and as a result of an emergency appeal, the Sixth Circuit enjoined Governor Beshear from prohibiting drive-in church services so long as the churches adhered to the same public health requirements mandated for "life-sustaining" entities. *See Maryville Baptist Church v. Beshear*, 957 F.3d 610, 616 (6th Cir. 2020) (per curiam).

18. In reaching that conclusion, the Sixth Circuit observed that "[t]he Governor's orders have several potential hallmarks of discrimination." *Id.* at 614. For example, the orders prohibited faith-based mass gatherings by name. *Id.* And they contained broad exceptions that

inexplicably allowed some groups to gather while prohibiting faith-based groups from doing

so. *Id.*

19. The court further noted that:

> [R]estrictions inexplicably applied to one group and exempted from another do little to
> further these goals and do much to burden religious freedom. Assuming all of the same
> precautions are taken, why is it safe to wait in a car for a liquor store to open but dangerous
> to wait in a car to hear morning prayers? Why can someone safely walk down a grocery store
> aisle but not a pew? And why can someone safely interact with a brave deliverywoman but
> not with a stoic minister? The Commonwealth has no good answers.

20. One week later, on Saturday, May 9, 2020, again as a result of an emergency appeal, the

Sixth Circuit again enjoined Governor Beshear. *Roberts v. Neace*, 958 F.3d 409 (6th Cir.

2020) (per curiam), which extended Maryville to re-open in-person worship in the

Commonwealth.

21. *Roberts* contains a number of observations and findings that are particularly relevant here:

> There are plenty of less restrictive ways to address these public-health issues. Why not insist
> that the congregants adhere to social-distancing and other health requirements and leave it at
> that—just as the Governor has done for comparable secular activities? Or perhaps cap the
> number of congregants coming together at one time? If the Commonwealth trusts its people
> to innovate around a crisis in their professional lives, surely it can trust the same people to do
> the same things in the exercise of their faith. The orders permit uninterrupted functioning of
> "typical office environments," R. 1-4 at 1, which presumably includes business meetings.
> How are in-person meetings with social distancing any different from in-person church
> services with social distancing? Permitting one but not the other hardly counts as no-more-
> than-necessary lawmaking.
>
> Sure, the Church might use Zoom services or the like, as so many places of worship have
> decided to do over the last two months. But who is to say that every member of the
> congregation has access to the necessary technology to make that work? Or to say that every
> member of the congregation must see it as an adequate substitute for what it means when
> "two or three gather in my Name," Matthew 18:20, or what it means when "not forsaking the
> assembling of ourselves together," Hebrews 10:25; *see also On Fire Christian Ctr., Inc. v.
> Fischer*, No. 3:20- CV-264-JRW, --- F. Supp. 3d ---, 2020 WL 1820249, at *7–8 (W.D. Ky.
> Apr. 11, 2020). *Id.* at 415.

22. The court thus enjoined the Governor again, holding that "at this point and in this place, the

unexplained breadth of the ban on religious services, together with its haven for numerous

secular exceptions, cannot co-exist with a society that places religious freedom in a place of honor in the Bill of Rights: the First Amendment." *Id.* at 416.

23. One day earlier, this Court granted a temporary restraining order stopping Governor Beshear from restricting religious practices. In *Tabernacle Baptist Church of Nicholasville, Inc. v. Beshear*, 459 F. Supp. 3d 847 (E.D. Ky. 2020), this Court concluded that "[e]ven viewed through the state-friendly lens of Jacobson [v. Massachusetts], the prohibition on religious services presently operating in the Commonwealth is 'beyond what was reasonably required for the safety of the public.'" *Id.* at 854–55 (citation omitted).

24. But religious liberty was not the only Constitutional right infringed by Governor Beshear. This Court found that he also violated the First Amendment guaranties of Free Speech and Assembly for political protests. *Ramsek v. Beshear*, 2020 U.S. Dist. LEXIS 110668, --- F.Supp.3d --- (EDKY 2020).

25. As demonstrated below, Governor Beshear's violations of the Constitution continue.

**<u>The First Amendment and the November 18, 2020 Orders</u>**

26. "[E]ducating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school." *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2064 (2020). Religious education and religious worship are inseparable. Indeed, "[r]eligious education is vital to many faiths practiced in the United States." *Id.* For example, "[i]n the Catholic tradition, religious education is 'intimately bound up with the whole of the Church's life.'" *Id.* at 2065 (quoting Catechism of the Catholic Church 8 (2d ed. 2016)). And, "Protestant churches, from the earliest settlements in this country, viewed education as a religious obligation." Id. "The contemporary American Jewish community continues to place the

8

education of children in its faith and rites at the center of its communal efforts." Id.  In Islam, the importance of education "is traced to the Prophet Muhammad, who proclaimed that '[t]he pursuit of knowledge is incumbent on every Muslim.'" *Id.*  "The Church of Jesus Christ of Latter-day Saints has a long tradition of religious education," and Seventh-day Adventists "trace the importance of education back to the Garden of Eden." *Id.* at 2066.  "Since the founding of this nation, religious groups have been able to 'sit in safety under [their] own vine and figtree, [with] none to make [them] afraid.'" *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 376 (6th Cir. 2018) (Thapar, J., dissenting) (*quoting* Letter from George Washington to Hebrew Congregation in Newport, R.I. (Aug. 18, 1790)).  In other words, the Constitutional right to attend religious instruction and education is one of the Nation's "most audacious guarantees." *On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 906 (W.D. Ky. 2020).

27. In the face of this well-established law, on November 18, 2020, Governor Beshear issued two executive orders, Executive Order 2020-968, and 2020-969, which are attached hereto, respectively, as **Exhibits A** and **B**.

28. Executive Order 2020-968 ("Home Gathering Ban"), which exempted from its purview education, childcare, and healthcare, prohibits and criminalizes any "social gathering," including within any private residence, of more than 8 people.  This includes, among other things, and upon confirmation with the Local Health Departments, family dinners where there are more than 8 people in attendance, and group meetings, including meetings for political purposes and gatherings.

29. Executive Order 2020-969 ("School Ban") prohibits and criminalizes in-person instruction for all schools, including private, religious schools, in grades K-12.  Consequently, this

School Ban unconstitutionally infringes on the rights of certain of these Plaintiffs, who include religious education and worship services as part of their educational mission, which is based upon their sincerely held beliefs.

30. While banning in-person religious education and instruction, the Governor permits a number of comparable secular activities of varying sizes.

31. The Governor permits childcare programs to continue, including limited duration child care centers,[3] which are permitted to have children in group sizes of 15, and, depending on the space of the facility, hundreds of children.  Just as schools do, these facilities provide meals for children, and instruct children in classroom set ups identical to schools.[4]  These centers are permitted to, and do, provide secular education instruction as part of their programming, including assisting children with school assignments.

32. Governor Beshear permits unlimited sizes of persons to assemble in factories and manufacturing, with social distancing, and, indeed, classroom instruction can occur in these settings.[5]

33. Governor Beshear permits movie theaters to operate, with children in attendance, at 50% capacity.[6]

---

[3] A limited duration center was a "pop up" center, often hosted by local YMCA's, were originally set up for the children of "essential" healthcare workers, first responders, and others. They have had favored status for months, and, with the recent school shutdown, that favored status remains even more apparent.

[4] https://apps.legislature.ky.gov/law/kar/922/002/405E.pdf (last visited 11/20/2020).

[5] https://govsite-assets.s3.amazonaws.com/s47CFNaSK6YhJMGPHBgB_Healthy%20at%20Work%20Reqs%20-%20Manufacturing%20Distribution%20Supply%20Chain%20-%20Final%20Version%203.0.pdf (last visited 11/20/2020).

[6] https://govsite-assets.s3.amazonaws.com/0iTtfR0ET2GFa05zMWie_2020-7-1%20-%20Healthy%20at%20Work%20Reqs%20Movie%20Theaters%20-%20Final%20Version%203.0.pdf (last visited 11/20/2020)

34. Executive Order 2020-968 permits gyms and fitness centers to operate at 33% capacity.

35. Governor Beshear permits auctions to operate at 50% capacity indoors, and unlimited capacity outdoors.[7]

36. Gas stations, grocery stores, retail establishments, and other businesses also remain open.

37. Governor Beshear permits gaming facilities to remain open.[8]

38. Governor Beshear permits secular colleges and universities to remain open.

39. Most of the aforementioned executive orders reference K.R.S. 39A and/or K.R.S. Chapter 214 as authority for their promulgation.

40. Both of those Chapters contain criminal penalties, such as K.R.S. 39A.990, establishing as a Class A misdemeanor any violations of orders issued under that Chapter, and K.R.S. 220.990, which generally provides as a Class B misdemeanor for any violations of orders under that Chapter.  K.R.S. 39A.190 gives police officers authority to "arrest without a warrant any person violating or attempting to violate in the officer's presence any order or administrative regulation made pursuant to" KRS Chapter 39A.

41. Amazingly, the very day after Governor Beshear issued Executive Order 2020-969, which as of November 23 closed, and criminalized attendance at, all in-person instruction at all public and private elementary, middle, and high schools in the Commonwealth, the director of the CDC announced "[t]he truth is, for kids K-12, one of the safest places they can be, from our perspective, is to remain in school," and that it is "counterproductive . . . from a public health

---

[7] https://govsite-assets.s3.amazonaws.com/VTgkgeDSbmgsImOob3lA_2020-7-22%20-%20Healthy%20at%20Work%20Reqs%20-%20Auctions%20-%20Version%203.1.pdf (last visited 11/20/2020)

[8] https://www.kentuckytoday.com/stories/as-many-mitigate-restriction-damages-gaming-venues-keep-rolling,29171 (last visited 11/21/2020).

point of view, just in containing the epidemic, if there was an emotional response, to say, 'Let's close the schools.'"[9]

42. Houses of worship may continue to operate and may conduct Bible studies any day of the week in enclosed spaces. They may also hold Sunday school on their premises in enclosed locations. But, Governor Beshear refuses to allow religious schools to conduct nearly identical activities in, at least for some of these Plaintiffs, the same exact space.

### The Plaintiffs, and their Protected Activities

43. Plaintiffs Pleasant View Baptist Church, Pleasant View Baptist School, Pastor Dale Massengale operate and run a church and school in McQuady, Breckenridge County, Kentucky. The school is an extension of the church and ministry and, as part of the school curriculum, the children have religious education and chapel service. Approximately 70 children attend the school, which offers classes in grades K-12. Attendance at the school by the children and the instruction provided by the school is part of the sincerely held religious beliefs of the congregants of the church. Among those beliefs is the importance of in-person instruction. Further, and for the avoidance of all doubt, the school has implemented, at significant cost, COVID-19 mitigation measures including, without limitation, social distancing, sanitation, temperature checks, partitions, lunch room procedures, mask wearing, and other CDC recommended control measures. Further, there is absolutely no evidence of any community spread of COVID-19 within the school.

---

[9] https://www.washingtonexaminer.com/news/school-is-safest-place-for-kids-to-be-cdc-director-says (last visited 11/20/2020).
https://www.c-span.org/video/?c4924557/cdc-director-redfield-data-supports-face-face-learning-schools&fbclid=IwAR1Kp3HKvUhZu8CJ1F8tGSISsMtnP0zNDJ3598kSC7sYffb6kDjhKS90zC0 (last visited 11/20/2020) (CDC Director confirming that all existing data demonstrates K-12 schools are not transmission pathways for the virus, in part due to safety protocols in place in schools).

44. Veritas Christian Academy is located in Lexington, Fayette County. The school is an extension of ministry and, as part of the school curriculum, the children have religious education and chapel service. Approximately 170 children attend the school, which offers classes in grades K-12. Attendance at the school by the children and the instruction provided by the school is part of the sincerely held religious beliefs of the parents and students. Among those beliefs is the importance of in-person instruction. Further, and for the avoidance of all doubt, the school has implemented, at significant cost, COVID-19 mitigation measures including, without limitation, social distancing, sanitation, temperature checks, partitions, lunch room procedures, mask wearing, and other CDC recommended control measures. Further, there is absolutely no evidence of any community spread of COVID-19 within the schools.

45. Highlands Latin School is located in Louisville, Jefferson County. The school is an extension of ministry and, as part of the school curriculum, the children have religious education. Approximately 700 children attend the school, which offers classes in grades K-12. Attendance at the school by the children and the instruction provided by the school is part of the sincerely held religious beliefs of the parents and students. Among those beliefs is the importance of in-person instruction. Further, and for the avoidance of all doubt, the school has implemented, at significant cost, COVID-19 mitigation measures including, without limitation, social distancing, sanitation, temperature checks, partitions, lunch room procedures, mask wearing, and other CDC recommended control measures. Further, there is absolutely no evidence of any community spread of COVID-19 within the schools.

46. Plaintiffs Maryville Baptist Church, MICAH Christian School, and Pastor Jack Roberts operate and run a church and school in Hillview, Bullitt County, Kentucky. The school is an

extension of the church and ministry and, as part of the school curriculum, the children have religious education and chapel service.  Approximately 175 children attend the school, which offers classes in grades K-12.  Attendance at the school by the children and the instruction provided by the school is part of the sincerely held religious beliefs of the congregants of the church.  Among those beliefs is the importance of in-person instruction.  Further, and for the avoidance of all doubt, the school has implemented, at significant cost, COVID-19 mitigation measures including, without limitation, social distancing, sanitation, temperature checks, partitions, lunch room procedures, mask wearing, and other CDC recommended control measures.  Further, there is absolutely no evidence of any community spread of COVID-19 within the school.

47. Plaintiffs Mayfield Creek Baptist Church, Mayfield Creek Christian School, and Pastor Terry Norris operate and run a church and school in Bardwell, Carlisle County, Kentucky.  The school is an extension of the church and ministry and, as part of the school curriculum, the children have religious education and chapel service.  Approximately 45 children attend the school, which offers classes in grades K-12.  Attendance at the school by the children and the instruction provided by the school is part of the sincerely held religious beliefs of the congregants of the church.  Among those beliefs is the importance of in-person instruction.  Further, and for the avoidance of all doubt, the school has implemented, at significant cost, COVID-19 mitigation measures including, without limitation, social distancing, sanitation, temperature checks, partitions, lunch room procedures, mask wearing, and other CDC recommended control measures.  Further, there is absolutely no evidence of any community spread of COVID-19 within the school.

48. Plaintiffs Faith Baptist Church, Faith Baptist Academy, Pastor Tom Otto operate and run a church and school in Bardwell, Carlisle County, Kentucky.  The school is an extension of the church and ministry and, as part of the school curriculum, the children have religious education and chapel service.  Approximately 31 children attend the school, which offers classes in grades K-12.  Attendance at the school by the children and the instruction provided by the school is part of the sincerely held religious beliefs of the congregants of the church.  Among those beliefs is the importance of in-person instruction.  Further, and for the avoidance of all doubt, the school has implemented, at significant cost, COVID-19 mitigation measures including, without limitation, social distancing, sanitation, temperature checks, partitions, lunch room procedures, mask wearing, and other CDC recommended control measures.  Further, there is absolutely no evidence of any community spread of COVID-19 within the school.

49. Plaintiffs Wesley Deters, Mitch Deters, on behalf of themselves and their minor children, MD, WD, and SD bring suit for the private, parochial school shutdown as well.  The children attend parochial schools within the Covington Diocese of the Catholic Church.  The Diocese has indicated that it would keep the children in-person for instruction but-for the challenged school shutdown orders and, thus, an order enjoining enforcement of these orders redresses the injury to these Plaintiffs.  Tens of thousands of students attend these diocesan schools.  The diocesan schools are an extension of the church and ministry and, as part of the schools' curriculum, the children have religious education and chapel service.  Attendance at the schools by the children and the instruction provided by the schools is part of the sincerely held religious beliefs of the members of the church.  Among those beliefs is the importance of in-person instruction.  Further, and for the avoidance of all doubt, the schools have

implemented, at significant cost, COVID-19 mitigation measures including, without
limitation, social distancing, sanitation, temperature checks, partitions, lunch room
procedures, mask wearing, and other CDC recommended control measures.  Further, there is
absolutely no evidence of any community spread of COVID-19 within any of the diocesan
schools.

50. Plaintiffs Central Baptist Church, Central Baptist Academy, Pastor Mark Eaton operate and
run a church and school in Mount Vernon, Rockcastle County, Kentucky.  The school is an
extension of the church and ministry and, as part of the school curriculum, the children have
religious education and chapel service.  Approximately 10 children attend the school, which
offers classes in grades K-12.  Attendance at the school by the children and the instruction
provided by the school is part of the sincerely held religious beliefs of the congregants of the
church.  Among those beliefs is the importance of in person instruction.  Further, and for the
avoidance of all doubt, the school has implemented, at significant cost, COVID-19 mitigation
measures including, without limitation, social distancing, sanitation, temperature checks,
partitions, lunch room procedures, mask wearing, and other CDC recommended control
measures.  Further, there is absolutely no evidence of any community spread of COVID-19
within the school.

51. Cornerstone Christian Church and Cornerstone Christian School operates and runs a church
and school in London, Laurel County, Kentucky, and John Miller is the President of the
Board of the school and a parent who brings the case on his own behalf and those of his
minor children who attend the school, BM, EM, and HM.  The school is an extension of the
church and ministry and, as part of the school curriculum, the children have religious
education and chapel service.  Approximately 115 children attend the school, which offers

classes in grades K-12.  Attendance at the school by the children and the instruction provided by the school is part of the sincerely held religious beliefs of the congregants of the church. Among those beliefs is the importance of in-person instruction.  Further, and for the avoidance of all doubt, the school has implemented, at significant cost, COVID-19 mitigation measures including, without limitation, social distancing, sanitation, temperature checks, partitions, lunch room procedures, mask wearing, and other CDC recommended control measures.  Further, there is absolutely no evidence of any community spread of COVID-19 within the school.

52. Collectively, the preceding Plaintiffs, the "Christian School Plaintiffs" would be unable to fulfill their religious purpose and mission—or implement their religious educational philosophy—and their religious beliefs would be substantially burdened, if the schools were prohibited from offering in-person, in-class instruction to their students.

53. Plaintiffs Austin and Sara Everson bring suit on their own behalf and on behalf of their minor children QR, WK, TK, AE, EE, EO, and AE2.  They reside in Scott County, Kentucky. Because Governor Beshear has criminalized their daily family dinner and other in-home family activities, they bring suit.

54. Nicole and James Duvall bring suit on their own behalf and on behalf of their minor children, JD, KD, VD, JD2, AD, RD, JD3, AD, CD.  They reside in Boone County, Kentucky. Because Governor Beshear has criminalized their daily family dinner and other in-home family activities, they bring suit.

55. Pastor Lee Watts and Tony Wheatley are both politically active individuals and, among other things, have historically, and intend in the future, to host politically-related peaceful assemblies of 15-20 individuals at their homes and their properties and curtilage surrounding

their homes.  With COVID-19, they intend to implement social distancing and other

mitigation measures.  The Governor has criminalized such activities.

**<u>Additional Allegations Concerning Standing</u>**

56. Governor Beshear is empowered, charged with, and authorized to enforce and carry out

Kentucky's emergency power laws and health related laws under K.R.S. Chapter 39A, and

KRS Chapters 221 and 214.  Moreover, Governor Beshear actually does enforce and

administer these laws.

57. After Governor Beshear's announcement of his edicts and orders challenged herein, several

of the named Plaintiffs called the Northern Kentucky Independent Health District, Lexington

Fayette County Health Department, Louisville Metro Health Department, Wedco Health

Department, and Daviess County Health Department (collectively the "Local Health

Departments").  During those telephone calls, each Local Health Department confirmed that

they: (i) received and accepted complaints from the public; and (ii) would take enforcement

action against any person violating the challenged edicts and orders.  Of particular relevance,

the telephoning Plaintiffs received confirmation that any group of people who exceeded 8

persons within a home, for any purpose, was a violation of the orders, which violation would

be enforced by these Local Health Departments, as would the orders to close schools.

58. Further, each of the Local Health Departments admitted[10] to the Plaintiffs that these orders

and mandates were required and would be enforced; the Local Health Departments would

first issue a notice of correction directing the schools to shut down if they learned the schools

had not shut down as ordered and, if the schools refused to do so, the Local Health

---

[10] Certain of these conversations were recorded by the Plaintiffs.

Departments would go into the schools with the Labor Cabinet and/or local law enforcement and ensure they shut down.

59. For the restrictions on in-home groups, the Local Health Departments indicated that they would enforce those restrictions by ensuring that the restrictions were known to the public and, if they received complaints, would refer the complaints to local police departments to disperse the crowds and cite non-compliant individuals.

60. The Plaintiffs have also confirmed with two separate local law enforcement agencies that if the law enforcement agencies become aware of more than 8 people within any private residence, they will disperse those persons and issue criminal citations.

61. Governor Beshear, himself, has directed the enforcement of his COVID-19 related orders including, without limitation, orders relating to religion.  Governor Beshear has directed the Kentucky State Police and other law enforcement agencies to enforce his orders, and they have done so.  Governor Beshear has issued, and continues to issue, directives to the Local Health Departments to direct their enforcement activities as explained herein.

62. As for Maryville Baptist Church and Pastor Roberts, they have been threatened with criminal prosecution by State Police dispatched by the Governor.

63. Plaintiffs, having been personally threatened with enforcement as explained herein, have demonstrated that Governor Beshear has an intention and has directed the threat of enforcement of the challenged orders.

64. Furthermore, and in furtherance of the enforcement threats, any teachers instructing at private schools have been threatened publicly by the Kentucky Commissioner of Education and his

spokesman with having their teaching certificates subject to discipline if they teach in contravention to Governor Beshear's orders.[11]

### <u>COUNT I – Violation of the Free Exercise Clause of the First Amendment (Christian School Plaintiffs</u>

65. The First Amendment of the Constitution protects the "free exercise" of religion. Fundamental to this protection is the right to gather and worship. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts...[such as the] freedom of worship and assembly."). The Free Exercise Clause was incorporated against the states in *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

66. Because of this fundamental protection, "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993). The requirements to satisfy this scrutiny are so high that the government action will only survive this standard in rare cases and the government bears the burden of meeting this exceptionally demanding standard. Id. "[T]he minimum requirement of neutrality is that a law not discriminate on its face." Id.at 533.

67. Governor Beshear's prohibition of any and all in-person private religious school instruction, in the name of fighting Covid-19, is not generally applicable. There are numerous secular exceptions to the Order, as explained herein.

68. Executive Order 2020-969 is neither neutral nor generally applicable.

---

[11] https://www.courier-journal.com/story/news/education/2020/11/18/kentucky-restrictions-k-12-classes-go-virtual-rest-semester/3768641001/ (last visited 11/21/2020).

69. Governor Beshear's orders not narrowly tailored, substantially burden religious exercise, are arbitrary and underinclusive toward secular conduct that creates the same or even greater potential risk as the prohibited religious activity.

70. Governor Beshear's executive orders, which constitute his political value judgment, unconstitutionally infringe on the autonomy of religious institutions and churches in violation of the First Amendment.  Governor Beshear, consistent with the First Amendment, cannot tell religious institutions and churches that they can hold in-person worship services, but cannot hold in-person schooling.  In Executive Order 2020-968, Governor Beshear ordered that his new limits on gatherings "does not apply to in-person services at places of worship, which must continue to implement and follow the Guidelines for Places of Worship."

71. Just this year, the United States Supreme Court held that the First Amendment protects the right of religious institutions and churches to make decisions about how to direct religious schooling. *Our Lady of Guadalupe*, 140 S. Ct. at 2055 (2020).

72. If religious institutions get to decide for themselves who teaches their children about religious faith, as *Our Lady of Guadalupe* holds, it follows that the schools themselves can determine the manner in which they provide such education.

73. Not only has Governor Beshear told religious schools that they cannot hold in-person classes, but he is simultaneously permitting religious institutions to hold in-person worship services. That is to say, Governor Beshear has declared that certain religious activities are legal—namely, in-person worship—while others are illegal—specifically, in-person religious schooling. The First Amendment forbids this direct "intru[sion]" into the "autonomy" of churches and religious institutions.

74. The Christian School Plaintiffs ask the Court to declare unlawful as violative of the Free Exercise Clause those portions of Executive Order 2020-969 that prevent religious schools from operating on the same terms as secular establishments that pose comparable public health risks, but are nevertheless allowed to remain open in the Commonwealth, and to enjoin Governor Beshear from further enforcement of Executive Order 2020-969 against them, and to extend such relief to other private religious schools.

75. Because the actions of Governor Beshear in prohibiting religious school in-person instruction violate the clearly established law set forth in *Roberts*, 958 F.3d 409 and *Our Lady of Guadalupe*, 140 S. Ct. at 2055, Governor Beshear is divested of qualified immunity and, as such, the Christian School Plaintiffs (except Highlands Latin School) seek compensatory damages against him in an individual capacity in amount to be determined at trial.

76. The Christian School Plaintiffs (except Highlands Latin School) further seek punitive damages against Governor Beshear in his individual capacity, since the actions complained of involve reckless or callous indifference to the federally protected rights of Plaintiffs, in an amount to be determined at trial.

**COUNT II – Violation of the Establishment Clause of the First Amendment (Christian School Plaintiffs**

77. Plaintiffs reincorporate the preceding Paragraphs as if fully written herein.

78. The Establishment Clause demands neutrality by the government toward religious groups. *Larsen v. Valentine*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.").

79. Governor Beshear's executive order violates this core principle by favoring religious organizations that provide in-person worship services over those that provide in-person schooling.

22

80. Governor Beshear's executive orders permit all manner of in-person worship to continue—Sunday services, Sunday school, Bible studies, and Wednesday night services. A religious organization that wishes to provide these services, including providing these services to school age children, can continue doing so. However, if the religious organization desires to keep open its school doors to school age children for daily religious instruction, it is forbidden.  The Establishment Clause prohibits Governor Beshear from favoring some religious organizations—those that only offer in-person worship services—and disfavoring other religious organizations—those that offer in-person schooling.

81. On behalf of Kentuckians and the Commonwealth as a whole, Attorney General Cameron asks the Court to declare that Executive Order 2020-969 violates the Establishment Clause of the First Amendment, and to enjoin Governor Beshear from further enforcement of that order against religious entities.

82. The Christian School Plaintiffs ask the Court to declare unlawful as violative of the Establishment Clause those portions of Executive Order 2020-969 that prevent religious schools from operating on the same terms as secular establishments that pose comparable public health risks but are nevertheless allowed to remain open in the Commonwealth, and to enjoin Governor Beshear from further enforcement of Executive Order 2020-969 against them, and to extend such relief to other private religious schools.

### COUNT III – Right to private education and for parents to control their children's education (Christian School Plaintiffs)

83. Plaintiffs reincorporate the preceding Paragraphs as if fully written herein.

84. The School Ban, Executive Order 2020-969, contravenes the Christian School Plaintiffs (including the parents and children's) fundamental right to receive a private education, and unreasonably interferes with the parents' rights to control their children's education. *Pierce*

23

*v. Society of Sisters*, 268 U.S. 510 (1925); *Meyer v. State of Nebraska*, 262 U.S. 390 (1923); *Farrington v. Tokushige*, 273 U.S. 284 (1927).

85. The Christian School Plaintiffs ask the Court to declare that Executive Order 2020-969 violates their fundamental rights under the Fourteenth Amendment to receive a private education and to direct their children's education, and to enjoin Governor Beshear from further enforcement of that order against them, and any other private religious school.

## COUNT IV – Violation of Freedom to Peaceably Assemble and Freedom of Association (All Plaintiffs)

86. Plaintiffs reincorporate the preceding Paragraphs as if fully written herein.

87. The First Amendment also guaranties the right "of the people peaceably to assemble."  This guaranty has also been incorporated against the states.  *DeJonge v. Oregon*, 299 U.S. 353 (1937); *NAACP v. Alabama ex. rel. Patterson*, 357 U.S. 449, 460-461 (1958).

88. The right to conduct peaceful assembly is embedded at the very core of First Amendment protection.  *Edwards v. South Carolina*, 372 U.S. 229 (1963); *Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969); *Gregory v. Chicago*, 394 U.S. 111 (1969).

89. The School Ban, Executive Order 2020-969 and Home Group Ban, Executive Order 2020-969, both violate the Freedom of Assembly.

90. The Plaintiffs ask the Court to declare that Executive Order 2020-969 and Executive Order 2020-968 violates their fundamental rights to peaceably assemble, and to enjoin Governor Beshear from further enforcement of those orders as to private schools or in-home assemblies.

## COUNT V – Violation of Right to Live together as a Family (Everson and Duvall Plaintiffs)

91. Plaintiffs reincorporate the preceding Paragraphs as if fully written herein.

24

92. Families have a fundamental right to live together, which cannot be interfered without a compelling governmental interest, and only with restrictions that are narrowly tailored. *Smith v. Organization of Foster Families*, 431 U.S. 816, 862-863 (1977); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978); *Moore v. City of East Cleveland*, 431 U.S. 494 (1977); *Troxell v. Granville*, 530 U.S. 57 (2000).

93. Governor Beshear's criminalization of family dinner (and a host of other everyday family events) for large families, such as the Everson and Duvall Plaintiffs, contravenes these guaranties.

94. The Evrson and Duvall Plaintiffs ask the Court to declare that Executive Order 2020-968 violates their fundamental rights to live together as a family, and to enjoin Governor Beshear from further enforcement of those orders as to families and households of more than 8 people.

## COUNT VI – Freedom of Speech (Watts and Wheatley)

95. Plaintiffs reincorporate the preceding Paragraphs as if fully written herein.

96. The prohibition on permitting gatherings of people in the homes to conduct political-related gatherings and speech is subject to the strict of scrutiny. *City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994) ("[a] special respect for individual liberty in the home has long been part of our culture and our law; that principle has special resonance when the government seeks to constrain a person's ability to speak there."); *Russell v. Lundergan-Grimes*, 769 F.3d 919 (6th Cir. 2014).

97. Mr. Watts and Mr. Wheatley seek a declaration Governor Beshear's order is unconstitutional under the First Amendment's Free Speech Clause, and injunction enjoining Executive Order

2020-968 insofar as it violates their freedom of speech to hold politically-related gatherings in their private homes, or on the property surrounding those homes.

### COUNT VII – Substantive Due Process (Everson and Duvall Plaintiffs)

98. Plaintiffs reincorporate the preceding Paragraphs as if fully written herein.

99. Substantive due process affords government officials substantial discretion, particularly in a pandemic, but this review is not absolutely meaningless. *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 Fed. Appx. 125, --- F.3d --- (6th Cir. 2020).

100.    There is no rational basis for government, even in a pandemic, to prohibit members of the same household from gathering, yet, as applied to large families such as the Everson and Duvall Plaintiffs, that is what the Governor has mandated.

101.    On this, the eve of Thanksgiving, the Governor has mandated that the Eversons and Duvalls select some of their children, one supposes, to eat outside, away from the remainder of the family, even though the family sleeps under the same roof, shares the same household ventilation system, and otherwise lives in close quarters throughout the day.

102.    While substantive due process is broad, it is not limitless, and as applied to large families, the no gatherings over 8 violates substantive due process.

### Injunctive Relief

103.    Plaintiffs have and continue to have their fundamental constitutional rights violated by this official capacity Defendants, who are personally involved with the enforcement and/or threatened enforcement of the challenged orders.  Plaintiffs will be irreparably harmed if injunctive relief is not issued.  Further, the public interest is served by the vindication of constitutional rights, and the weighing of harms warrants issuing injunctive relief.

<u>Generally</u>

104.    Governor Beshear abused the authority of his office and, while acting under color of law and with knowledge of Plaintiffs' established rights, used his office to violate Plaintiffs' Constitutional rights, privileges, or immunities secured by the Constitution and laws.

105.    Thus, under 42 U.S.C 1983, Plaintiffs seek declaratory relief and injunctive relief. Pursuant to 42 U.S.C. 1988, Plaintiffs further seek their reasonable attorney fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Defendants as prayed for, including:

A.  That this Court issue a declaration that the challenged orders are unconstitutional.

B.  That this Court enter permanent injunctive relief to prohibit enforcement of the challenged orders.

C.  That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988;

D.  That the Christian School Plaintiffs (except Highlands Latin School) be awarded reasonable compensatory damages against the individual capacity Defendant and a jury trial on those claims; and

E.  Such other relief as this Court shall deem just and proper.

### JURY DEMAND

Plaintiffs demand trial by jury for all claims so triable.

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)

Respectfully submitted,


/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com


/s/Thomas Bruns_____
Thomas Bruns (KBA 84985)
Bruns Connell Vollmar Armstrong, LLC
4750 Ashwood Drive, STE 200
Cincinnati, OH 45241
tbruns@bcvalaw.com
513-312-9890

/s/Robert A. Winter, Jr. _____
Robert A. Winter, Jr. (KBA #78230)
P.O. Box 175883
Fort Mitchell, KY 41017-5883
(859) 250-3337
robertawinterjr@gmail.com

**Attorneys for Plaintiffs**



**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

**Secretary of State**
Frankfort
Kentucky

**2020-968**
**November 18, 2020**

## STATE OF EMERGENCY

The novel coronavirus (COVID-19) is a respiratory disease causing illness that can range from very mild to severe, including illness resulting in death, and many cases of COVID-19 have been confirmed in the Commonwealth.

The Kentucky Constitution and Kentucky Revised Statutes, including KRS Chapter 39A, empower me to exercise all powers necessary to promote and secure the safety and protection of the civilian population, including the power to command individuals to disperse from the scene of an emergency and to perform and exercise other functions, powers, and duties necessary to promote and secure the safety and protection of the civilian population. Under those powers, I declared by Executive Order 2020-215 on March 6, 2020, that a State of Emergency exists in the Commonwealth. The Centers for Disease Control and Prevention (CDC) has concluded that COVID-19 most commonly spreads during close contact between people, and can sometimes be spread through airborne transmission, particularly among individuals in enclosed spaces. As a result, scenes of emergency exist where people gather together, potentially spreading COVID-19.

Kentucky is now experiencing a potentially catastrophic surge in COVID-19 cases, which threatens to overwhelm our healthcare system and cause thousands of preventable deaths. Despite Red Zone Reduction Recommendations, Kentucky is faced with exponential growth of COVID-19 cases.

Accordingly, new public health measures are required to slow the spread of COVID-19. Kentuckians can save lives if they remain Healthy at Home, which will continue to help protect our community from the spread of COVID-19.

## Order

I, Andy Beshear, by virtue of authority vested in me pursuant to the Constitution of Kentucky and by KRS Chapter 39A, do hereby Order and Direct as follows:



**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

**Secretary of State**
Frankfort
Kentucky

**2020-968**
**November 18, 2020**

1.  All prior orders and restrictions remain in full force and effect, except as modified below. In particular, all Kentuckians should continue to wear face coverings to protect themselves and others, as set forth in Executive Order 2020-931 (and any order renewing it) and 902 KAR 2:210E. Current guidance and restrictions shall continue to apply to any activity not listed below.

2.  This Order does not apply to education, childcare, or healthcare, which operate under separately issued guidance and orders. Current guidance for all entities is available online at the Healthy at Work website (https://govstatus.egov.com/ky-healthy-at-work).

3.  These restrictions shall take effect on Friday, November 20, 2020, at 5 p.m. local time, and shall expire on Sunday, December 13, 2020, at 11:59 p.m. local time.

4.  **Restaurants and Bars.** All restaurants and bars must cease all indoor food and beverage consumption. Restaurants and bars may provide delivery and to-go service to the extent otherwise permitted by law. Restaurants and bars may provide outdoor service, provided that all customers are seated at tables, table size is limited to a maximum of eight (8) people from a maximum of two (2) households, and tables are spaced a minimum of six (6) feet apart. For the avoidance of doubt, this restriction applies to indoor dining facilities at retail locations, including food courts. A household is defined as individuals living together in the same home. Additional guidance for outdoor dining is available online at the Healthy at Work website (https://govstatus.egov.com/ky-healthy-at-work).

5.  **Social Gatherings.** All indoor social gatherings are limited to a maximum of two (2) households and a maximum of eight (8) people. A household is defined as individuals living together in the same home.

6.  **Gyms, Fitness Centers, Pools, and Other Indoor Recreation Facilities.** Gyms, fitness centers, swimming and bathing facilities, bowling alleys, and other indoor recreation facilities must limit the number of customers present inside any given establishment to 33% of the maximum permitted occupancy and ensure that individuals not from the same household maintain six (6) feet of space between each other. Indoor group activities, group classes, team practices, and team competitions are prohibited. Notwithstanding 902 KAR 2:210E, Section 2(3)(j), all individuals inside such facilities must wear face coverings at all times, including while actively engaged in exercise. For the avoidance of doubt, this provision does not apply to athletic activities at schools, for which separate guidance will be provided by KHSAA, or athletic activities at institutions of higher education.

7.  **Venues, Event Spaces, and Theaters.** Indoor venues, event spaces, and theaters are limited to 25 people per room. This limit applies to indoor weddings and funerals. For the avoidance of doubt, this limit does not apply to in-person services at places of worship, which must continue to implement



**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

**Secretary of State**
Frankfort
Kentucky

**2020-968**
**November 18, 2020**

and follow the Guidelines for Places of Worship available online at the
Healthy at Work website (https://govstatus.egov.com/ky-healthy-at-work).

8. **Professional Services.** All professional services and other office-based
businesses must mandate that all employees who are able to work from home
do so, and close their businesses to the public when possible. Any office that
remains open must ensure that no more than 33% of employees are physically
present in the office any given day.

9. Nothing in this Order should be interpreted to interfere with or infringe on the
powers of the legislative and judicial branches to perform their constitutional
duties or exercise their authority.

ANDY BESHEAR, Governor
Commonwealth of Kentucky

MICHAEL G. ADAMS
Secretary of State



**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

**Secretary of State**
Frankfort
Kentucky

**2020-969**
**November 18, 2020**

## STATE OF EMERGENCY

The novel coronavirus (COVID-19) is a respiratory disease causing illness that can range from very mild to severe, including illness resulting in death, and many cases of COVID-19 have been confirmed in the Commonwealth.

The Kentucky Constitution and Kentucky Revised Statutes, including KRS Chapter 39A, empower me to exercise all powers necessary to promote and secure the safety and protection of the civilian population, including the power to command individuals to disperse from the scene of an emergency and to perform and exercise other functions, powers, and duties necessary to promote and secure the safety and protection of the civilian population. Under those powers, I declared by Executive Order 2020-215 on March 6, 2020, that a State of Emergency exists in the Commonwealth. The Centers for Disease Control and Prevention (CDC) has concluded that COVID-19 most commonly spreads during close contact between people, and can sometimes be spread through airborne transmission, particularly among individuals in enclosed spaces. As a result, scenes of emergency exist where people gather together, potentially spreading COVID-19.

Kentucky is now experiencing a potentially catastrophic surge in COVID-19 cases, which threatens to overwhelm our healthcare system and cause thousands of preventable deaths. Despite Red Zone Reduction Recommendations, Kentucky is faced with exponential growth of COVID-19 cases. Accordingly, Executive Order 2020-968, issued today, imposed new public health measures to slow the spread of COVID-19.

Additional public health measures concerning elementary, middle, and high schools are necessary to further slow the spread of COVID-19 now. These measures are intended to ensure that as many schools as possible may safely return to in-person instruction in the near future.



**ANDY BESHEAR**
GOVERNOR

**EXECUTIVE ORDER**

**Secretary of State**
Frankfort
Kentucky

**2020-969**
**November 18, 2020**

### Order

I, Andy Beshear, by virtue of authority vested in me pursuant to the Constitution of

Kentucky and by KRS Chapter 39A, do hereby Order and Direct as follows:

1. All public and private elementary, middle, and high schools (kindergarten through grade 12) shall cease in-person instruction and transition to remote or virtual instruction beginning November 23, 2020.

2. All middle and high schools (grades 6 through 12) shall remain in remote or virtual instruction and not resume in-person instruction prior to January 4, 2021.

3. For the period from December 7, 2020 to January 4, 2021, all elementary schools (kindergarten through grade 5) may reopen for in-person instruction, provided:

   a. The school is not located in a Red Zone County, as provided by the Kentucky Department for Public Health on the COVID-19 website (available at https://govstatus.egov.com/kycovid19); **and**

   b. The school follows all expectations in the KDE Healthy at School Guidance on Safety Expectations and Best Practices for Kentucky Schools (available at https://govstatus.egov.com/ky-healthy-at-school).

4. Nothing in this Order shall prohibit schools from providing small group in-person targeted services, as provided in KDE guidance.

5. This Order shall apply to all institutions of public and private elementary and secondary education, but does not apply to private schools conducted in a home solely for members of that household.

ANDY BESHEAR, Governor
Commonwealth of Kentucky

MICHAEL G. ADAMS
Secretary of State

<u>VERIFICATION</u>

Pursuant to 28 U.S.C. 1746, I, Dale Massengale, on behalf of myself, and Pleasant View Baptist
Church and Pleasant View Baptist School, declare under penalty of perjury that I have read the
foregoing Verified Complaint, that I am competent to testify in this matter, that the facts
contained therein are true and correct, and are based information personally known and observed
by me

Executed on _11 - 20 - 2020_

_____
Dale Massengale

VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Johnathan Miller, on behalf of myself, and Cornerstone Christian
~~School Church~~, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I
am competent to testify in this matter, that the facts contained therein are true and correct, and
are based information personally known and observed by me

Executed on    11/21/20    .

Jonathan Miller
Johnathan Miller

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Terry Norris, on behalf of myself, and Mayfield Creek Christian Academy and Mayfield Creek Baptist Church, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me

Executed on _11-20-2020_.

Terry Norris

<u>VERIFICATION</u>

Pursuant to 28 U.S.C. 1746, I, Lee Watts, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me

Executed on 11-21-2020.

Lee Watts

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Wesley Deters, on behalf of myself, and my minor children, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me

Executed on 11/20/20 .

Wesley Deters

<u>VERIFICATION</u>

Pursuant to 28 U.S.C. 1746, I, Lynn Wilson, on behalf of myself, Veritas Christian Church, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me

Executed on __11/21/20__ .

_Lynn Wilson_
Lynn Wilson

<u>VERIFICATION</u>

Pursuant to 28 U.S.C. 1746, I, Jack Roberts, on behalf of myself, Maryville Baptist Church, and MICAH Baptist School, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me

Executed on _11-23-20_ .

Jack Roberts

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Tom Otto, on behalf of myself, Faith Baptist Church, and Faith Baptist Academy, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me

Executed on ___11/21/20___ .

Tom Otto

<u>VERIFICATION</u>

Pursuant to 28 U.S.C. 1746, I, Brian Lowe, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me

Executed on 11-21-2020.

_____
*Brian Lowe*

Brian Lowe

<u>VERIFICATION</u>

Pursuant to 28 U.S.C. 1746, I, Nicole Duvall, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me.

Executed on 11-23-2020.


_Nicole Duvall_
Nicole Duvall

VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Sara Everson, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me.

Executed on 11-23-2020.

Sara Everson