UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

|  |  |  |
|---|---|---|
| PLEASANT VIEW BAPTIST CHURCH., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 2:20-cv-00166-GFVT-CJS |
| v. | ) ) | **OPINION** |
| LYNNE M. SADDLER, *et al*, | ) ) ) | **&** **ORDER** |
| Defendants. | ) ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

The business of being a judge should be informed with a good measure of modesty. After all, we resoundingly rejected the unitary government modeled by the British crown at the founding in favor of a republic—majorities don't always control but are to be respected.

So, Kentuckians chose our current governor, along with a legislature, to make difficult policy choices. These choices are particularly difficult when faced with a crisis like the current pandemic. Courts are not designed or empowered, nor should they be tempted, to make contrary policy choices by fiat.

Presumably, the Plaintiffs in this case agree with this preamble. But this is not a case about the merits of policy choices. Instead, these Plaintiffs question whether the Governor's choices are contrary to the law—specifically the First Amendment. And that determination is the business of the Court.

Religious schools have been closed to in-person teaching and limits imposed on in-home social gatherings. The Governor, acting alone pursuant to his executive authority, explains his reasons at length. In an earlier case, the Court found the former policy was likely to be contrary

to the First Amendment's Free Exercise protection.  The Sixth Circuit Court of Appeals

disagreed.  We await final determination by the United States Supreme Court.

As to the latter policy choice, the Governor restricts our liberty, but not in a way that

offends the First Amendment.  Here, for the reasons that follow, Plaintiffs are unlikely to

succeed on the merits.  Their request for a preliminary injunction will be DENIED.[1]

## I

On November 18, 2020, Governor Beshear issued Executive Orders 2020-968 and 2020-

969.  [R. 1 at 9.]  Order 2020-968 limits all indoor social gatherings "to a maximum of two (2)

households and a maximum of eight (8) people."  [Exec. Order 2020-968 at 2.]  The order

defines household as "individuals living together in the same home."  *Id.*  Order 2020-969, in

relevant part, (1) requires all public and private elementary, middle, and high schools to cease in-

person instruction and transition to remote or virtual instruction beginning November 23, 2020;

(2) requires all middle and high schools to remain virtual until at least January 4, 2021; and (3)

permits some elementary schools to resume in-person instruction between December 7, 2020,

and January 4, 2021, but only if the school is not located in a "Red Zone County" and follows all

expectations and best practices.  [Exec. Order 2020-969.]

Plaintiff Pleasant View Baptist Church and several other churches, schools, and families

within the Commonwealth,[2] believe that these executive orders violate their constitutional rights.

---

[1] Defendant Dr. Saddler, in her official capacity, submitted a motion to dismiss the complaint against her on December 10, 2020.  [R. 22.]  The Court will address Dr. Saddler's motion to dismiss in a separate order once it has been fully briefed.

[2] Plaintiffs in this case include the following parties: Pleasant View Baptist Church, Pleasant View Baptist School, Pastor Dale Massengale, Veritas Christian Academy, Highlands Latin School, Maryville Baptist Church, Micah Christian School, Pastor Jack Roberts, Mayfield Creek Baptist Church, Mayfield Creek Christian School, Pastor Terry Norris, Faith Baptist Church, Faith Baptist Academy, Pastor Tom Otto, Wesley and Mitch Deters on behalf of themselves and their three minor children, Central Baptist Church, Central Baptist Academy, Pastor Mark Eaton, Cornerstone Christian School, John Miller on behalf of himself and his three minor children, Austin and Sara Everson on behalf of themselves and their seven minor children, Nicole and James Duvall on behalf of themselves and their nine minor children, Lee Watts, and Tony Wheatley.  Because some claims in this preliminary injunction involve some parties and not others, the Court will identify which group of plaintiffs is being implicated in each

On November 23, 2020, Pleasant View filed a motion with Judge David Bunning requesting either a temporary restraining order or a preliminary injunction. [R. 3.] Judge Bunning transferred the case to this Court on November 24, 2020, as related to *Danville Christian Academy, et al. v. Beshear*, 2020 WL 6954650 (E.D. Ky. Nov. 25, 2020).[3] [R. 7.]

In this request for preliminary injunction, Pleasant View has brought the following seven claims: (1) violation of the Free Exercise Clause of the First Amendment for the Christian school Plaintiffs; (2) violation of the Establishment Clause of the First Amendment for the Christian school Plaintiffs; (3) violation of the right to private education and for parents to control their children's education for the Christian school Plaintiffs; (4) violation of the freedom to peacefully assemble and freedom of association for all Plaintiffs; (5) violation of the right to live together as a family for the Everson and Duvall Plaintiffs; (6) violation of the freedom of speech for the Watts and Wheatley Plaintiffs; and (7) violation of substantive due process for the Everson and Duvall Plaintiffs.

## II

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (cleaned up) ("[A] preliminary injunction involv[es] the exercise of a very far-reaching power ...."). To issue a preliminary

---

claim as necessary. However, if the Court merely refers to "Pleasant View," the court is referring to plaintiffs collectively. Defendants include Governor Beshear and Lynne Saddler, Director of the Northern Kentucky Health Department. References in the opinion to "Governor Beshear" encompass both defendants unless otherwise specified.

[3] For the sake of expediency and judicial economy, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, this Court determined that a preliminary injunction was most appropriate at this stage of the proceedings. [R. 9.] In ruling on the preliminary injunction, the Court held a hearing on December 3, 2020. Counsel for Pleasant View, Governor Beshear, and the Northern Kentucky Health Department (on behalf of Dr. Saddler) participated in the hearing.

injunction, the Court must consider: 1) whether the movant has shown a strong likelihood of success on the merits; 2) whether the movant will suffer irreparable harm if the injunction is not issued; 3) whether the issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuing the injunction. *Overstreet*, 305 F.3d at 573.

The Court of Appeals clarified that, "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). However, even if the plaintiff is unable "to show a strong or substantial probability of ultimate success on the merits," an injunction can be issued when the plaintiff "at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). Thus, Pleasant View must show that the foregoing preliminary injunction factors are met, and that immediate, irreparable harm will result if the injunction is not issued.

## A

An initial matter is the question of standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) ("a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought") (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y.*, 137 S. Ct. at 1651.

Standing is a threshold inquiry in every federal case that may not be waived by the parties. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Planned Parenthood Ass'n of Cincinnati, Inc. v. Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). "To satisfy the 'case' or 'controversy requirement' of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered an 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted). Plaintiffs' injury-in-fact must be both particularized and concrete. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). Further, a "concrete" injury is a de facto injury that actually exists. *Id.* Finally, "a plaintiff must also establish, as a prudential matter, that he or she is the proper proponent of the rights on which the action is based." *Haskell v. Washington Twp.*, 864 F.2d 1266, 1275 (6th Cir. 1988) (citations omitted).

To establish standing to challenge a law prior to its enforcement, a plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). The Sixth Circuit has held that "a credible threat of prosecution [exists] where plaintiffs allege a subjective chill *and* point to some combination of the following factors: (1) a history of past enforcement against the plaintiffs or others; (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct; and/or (3) an attribute of the challenged statute

5

that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action." *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016).

**1**

The Christian school Plaintiffs here are similarly situated to the plaintiff in *Danville Christian Academy*. There, this Court found standing to bring suit alleging Free Exercise, Establishment Clause, and RFRA violations against Governor Beshear. This was the case because there existed "(1) an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) that is "proscribed by a [law]," and (3) "there exists a credible threat of prosecution thereunder." *Danville Christian Academy, Inc.* 2020 WL 6954650 at n.3 (quoting *Susan B. Anthony List*, 573 U.S. at 159 (citation omitted)). The Christian school Plaintiffs here are similarly situated to Danville Christian Academy because the Plaintiffs are also private schools that wish to continue in-person instruction in contravention of Executive Order 2020-969. Violation of these recently promulgated executive orders is a Class A misdemeanor. *See* KRS § 39A.990; *see also* KRS § 532.020(2); KRS § 534.040 (setting forth the penalties for a Class A misdemeanor). Furthermore, there is an established record of enforcement against institutions that have violated executive orders during the pandemic. *See, e.g.*, *Maryville Baptist Church v. Beshear*, 957 F.3d 610, 611-12 (6th Cir. 2020); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020).

The Christian school Plaintiffs have also sufficiently pled standing for the right to private education and for parents to control their children's education claim because parents who wish to send their children to private schools (which is a constitutional interest, *Pierce v. Society of Sisters*, 268 U.S. 510 (1925)) to receive in-person training cannot do so under Executive Order

2020-969 and risk enforcement action and penalties against them if they violate the order.  *See*

*Susan B. Anthony List*, 573 U.S. at 159; *see also* KRS § 39A.990; KRS § 532.020(2); KRS §

534.040 (setting forth the penalties for a Class A misdemeanor).  Given the limited record before

the Court, and the fact that the Governor has raised no argument to the contrary, the Court finds

that the Christian school Plaintiffs have standing to bring suit as to the Free Exercise Clause and

Establishment Clause claims as well as the right to private education and for parents to control

their children's education claim.

2

As to the individual Plaintiffs, particularly Everson, Duvall, Watts, and Wheatley, the

Governor argues that they have "failed to allege facts establishing they have standing."  [R. 16 at

12.]  The Governor points to *W.O. v. Beshear*, in which this Court found that private plaintiffs

challenging a travel restriction measure could not establish standing because (1) no part of the

travel measure had yet been enforced against the plaintiffs or anyone else; (2) no enforcement

letter had been sent to the plaintiffs; and (3) no part of the order contained an attribute making

enforcement more likely.  459 F. Supp. 3d 833, 841 (E.D. Ky. 2020).

In response, Plaintiffs allege that the Governor has taken specific actions in the past to

enforce executive orders regarding religious and political gatherings.  [R. 1 at 6, 8; R. 17 at 1–2.]

Plaintiffs also allege that they called several of the Health Departments charged with

enforcement of the orders, as well as two law enforcement agencies, and received confirmation

in each case that the orders would be enforced against them.  [R. 17 at 2.]

The Sixth Circuit recently shed light on the unique standing circumstances in these cases.

*Ramsek v. Beshear*, No. 20-5542 (6th Cir. May 23, 2020).  In *Ramsek*, Governor Beshear issued

an order on March 19, 2020, prohibiting all mass gatherings to slow the spread of the virus.  *Id.*

7

at 1.  The order imposed criminal penalties on violators, and Governor Beshear set up a Covid-19 reporting hotline so that members of the public court report violations of the order.  *Id.* at 2.  The plaintiffs planned to hold a protest at the Kentucky Capitol and sought an injunction pending an appeal on (1) their right to gather and protest, and (2) injunction enjoining the Governor from criminally prosecuting or quarantining them for having attended prior protests.  *Id.*

This Court had ruled that plaintiffs "failed to show a likelihood of success in establishing any of the *McKay* factors."  *Id.* at 3.  However, the Sixth Circuit disagreed, holding that a history of previous enforcement of the Order existed because "on at least one previous occasion the police blocked protestors from conducting a drive-through protest on public roads around the state Capitol."  *Id.*  Further, despite the state police commissioner submitting a declaration stating the order would not be enforced against any protestors on May 23, 2020, which was the day of the protest at issue in *Ramsek*, the Sixth Circuit held that (1) "ad hoc carve-outs to criminal prohibitions created mid-litigation" are given little weight, and (2) the police commissioner lacks authority to determine whether violations of an executive order should be prosecuted or not.  *Id.*

Given the precedent of *Ramsek*, the Court finds standing for Plaintiffs' remaining claims: violation of freedom to peaceably assemble and freedom of association; violation of the right to live together as a family; violation of the freedom of speech; and violation of substantive due process.  [R. 1 at 24–26.]  Just as in *Ramsek*, the Plaintiffs here have demonstrated a history of previous enforcement against the Plaintiffs and other citizens.  [R. 1 at 6–8.]  Furthermore, in *Ramsek*, the police commissioner had promised *not* to enforce the executive order on May 23, 2020, and the Sixth Circuit still found standing.  No. 20-5422 at 3.  Here, the Plaintiffs specifically reached out to agencies with enforcement capabilities, which included several health

departments around the Commonwealth and two law enforcement agencies, and the agencies told Plaintiffs that the orders would be enforced against them if they received a complaint.[4] These facts also distinguish the present case from *W.O. v. Beshear*, in which the plaintiffs could not demonstrate a history of past enforcement, the presence of warning letters, or an attribute of the challenged law that made enforcement easier or more likely.  459 F. Supp. 3d 833 at 840–41.

### 3

In this case, Plaintiffs have met the threshold inquiry of standing.  "Standing is not intended to be a particularly high bar; instead, the doctrine serves to prevent a litigant from raising another's legal right."  59 Am. Jur. 2d *Parties* § 29 (2020).  Here, the Christian school Plaintiffs have established standing on the Free Exercise Clause, Establishment Clause, and right to private education claims, and the individual Plaintiffs have established standing on the freedom to peaceably assemble and freedom of association, right to live together as a family, freedom of speech, and substantive due process claims.

### B

The Plaintiff Christian schools argue that Executive Order 2020-969 violates the Free Exercise Clause and the Establishment Clause of the First Amendment.  This Court addressed these same claims in *Danville Christian Academy v. Beshear*.[5]  2020 WL 6954650 (E.D. Ky.

---

[4] Counsel for defendant Dr. Sadler stated at the hearing on December 3, 2020, that only two of the named plaintiffs, the Dieters and Duvalls, were within the jurisdiction of the Northern Kentucky Health Department and therefore the plaintiffs lacked standing to bring this suit against the department.  Furthermore, counsel stated that the local health department lacks enforcement capability as it pertains to individuals.  However, counsel admitted that the health department can and has taken on enforcement authority in the context of the Covid-19 pandemic, and the department also has the authority to contact law enforcement if there is evidence that an executive order is being violated.  As stated above, Plaintiffs allege they were told that the health department would in fact enforce the executive orders against them, indicating that the department did in fact have some modicum of enforcement capability.

[5] Plaintiffs in fact filed a motion to intervene on November 21, 2020, and an emergency motion for temporary restraining order on November 22, 2020, in the *Danville* case.  However, on November 23, 2020, Plaintiffs filed their complaint and motion for TRO or preliminary injunction in this case with Judge David Bunning and on November 24, 2020, filed a notice of withdrawal of their motions in the *Danville* case.  [R. 1.]

Nov. 25, 2020).  In *Danville*, Danville Christian argued that it has a sincerely held religious belief that "it is called by God to have in-person religious and academic instruction for its students."  *Id.* at 1.  Danville Christian argued that Executive Order 2020-969, by banning in-person instruction, violated its First Amendment rights to free exercise of religion.  *Id.*

In an order that applied statewide, this Court found that while Danville Christian was not likely to succeed on its Establishment Clause claim, it had established a likelihood of success on the merits with respect to the Free Exercise Clause claim and granted the preliminary injunction on that basis.[6]  *Id.* at 7, 9.

The Sixth Circuit took up the case and rendered an opinion several days later. *Commonwealth v. Beshear*, 2020 WL 7017858 (6th Cir. Nov. 29, 2020).  The Sixth Circuit agreed with this Court that Danville Christian was unlikely to succeed on the merits with respect to its Establishment Clause claim, but the Sixth Circuit also found that Danville Christian was unlikely to succeed on its Free Exercise Clause claim and granted a motion to stay the preliminary injunction, pending appeal.  *Id.* at 4.  Specifically, the Sixth Circuit held that the order in question was neutral and of general applicability and therefore did not need to be justified by a compelling government interest.  *Id.*

Ultimately, the Supreme Court will decide this question.  *Danville Christian Academy, Inc., et al. v. Beshear*, 20-6341 (6th Cir. Nov. 29, 2020), *appeal docketed*, No. 20A96 (Dec. 1, 2020).  At this juncture, an injunction is not supported given the teaching of the Sixth Circuit, but that could change.  And if it does, this Court will revisit Pleasant View's request.

Finally, a brief word about several arguments presented by the religious schools here that were not present in *Danville Christian Academy*.  Plaintiffs also argue that Executive Order

---

[6] The Court also addressed a RFRA argument in *Danville*, but no such argument is before the Court in this case.

2020-969 infringes on the right to private education and of parents to control their children's education.  [R. 1 at 23.]  Plaintiffs argue that strict scrutiny should be applied here because this private education claim is being coupled with a Free Exercise Clause claim.  [R. 3 at 18.]  The Court is aware that when a private education claim is coupled with a Free Exercise claim, "strict scrutiny is applied to restrictions upon private religious schools."  *Ohio Ass'n of Ind. Sch. v. Goff*, 92 F.3d 419 (6th Cir. 1996).  However, at issue here is not the right to private education and of parents to choose where their children go to school generally, which is the fundamental right protected by the constitution.  *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Meyer v. State of Nebraska*, 262 U.S. 390 (1923); *Farrington v. Tokushige*, 273 U.S. 284 (1927).

The fundamental right to private education has more to do with the fact that "parents have a constitutional right to send their children to private schools and a constitutional right to select private schools that offer specialized instruction."  *Ohio Ass'n of Ind. Sch.*, 92 F.3d at 422.  The executive order does not prevent parents from choosing to send their children to private school or selecting private schools that offer specialized instruction.  Instead, the issue with Executive Order 2020-969 is that it prohibits religious private schools from exercising their religious conviction to meet in person, which is more appropriately analyzed under the Free Exercise Clause of the First Amendment.  Therefore, the Court finds that the right to private education is not implicated.

The Christian school Plaintiffs also argue Executive Order 2020-969 violates their freedom of assembly and freedom of association rights.  [R. 1 at 24.]  Christian school Plaintiffs wish to come together and exercise their sincerely held religious beliefs and argue that the executive order prevents them from doing so.  [R. 3.]  As will be discussed in greater detail below, both Executive Order 2020-969 and 2020-969 are content neutral and narrowly tailored.

11

Order 2020-969 requires all schools, public and private, to transition to online instruction for a few weeks.  [Exec. Order 2020-969.]  Furthermore, the orders are also of a short duration and "serve purposes unrelated to the content of expression."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  There is no evidence that this executive order was promulgated for any reason other than to slow the spread of Covid-19.  Neither party has argued that this order was promulgated for the purpose of limiting certain content at Christian private schools.  Therefore, the Court finds that the executive order is content-neutral. Executive Order 2020-969 is narrowly tailored and leaves open alternative channels of communication by leaving open the opportunity for schools to continue online instruction and only serving as a temporary measure to prevent the spread of Covid-19.  [R. 16 at 20.]

## C

### 1

Here, the individual Plaintiffs also seek to implicate broader First Amendment protections.  They claim that Executive Order 2020-968 violates the freedom of speech, the freedom to peaceably assemble, and the freedom of association.  [R. 1 at 24.]  The First Amendment, as applied to the states through the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law ... abridging the freedom of speech, ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  Plaintiffs complain that the executive orders abridge their freedom of speech by prohibiting individuals from gathering in their homes to conduct political-related gatherings, and their freedom to assemble and associate by preventing individuals from banding together at school to exercise, as a group, their sincerely held religious beliefs.  [R. 3 at 19–20.]

Of course, these rights are not absolute.  *See Citizens for Tax Reform v. Deters*, 518 F.3d 375, 375 (6th Cir. 2008).  There exists a push and pull between the public's privileges and the government's power to regulate in this arena.  "[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. For Krishna Consciousness*, 452 U.S. 640, 647 (1981).

Although the First Amendment protects several categories of rights, it is often difficult in practice to determine where one right ends and the next begins.  This is particularly true with freedom of speech and freedom of assembly.  *De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937) ("The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental.").  Consequently, courts typically evaluate free speech, assembly, association, and petition claims under the same analytical framework.  *See Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984); *see also Citizens for Tax Reform*, 518 F.3d at 379; *Stagman v. Ryan*, 176 F.3d 986, 999 (7th Cir. 1999); *Asbury v. Teodosio*, 412 F. App'x 786, 789 n.3 (6th Cir. 2011); *United States v. Winslow*, 116 Fed. App'x 703, 704 (6th Cir. 2004).

Content-based restrictions on speech are subject to strict scrutiny, as are content-based restrictions on expressive activity.  *See Reed v. Town of Gilbert*, 576 U.S. 155, 157 (2015); *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010).  Under strict scrutiny, the restriction must be necessary to serve a compelling state interest and narrowly tailored to achieve that interest.  *Id.*  A content-based restriction on speech is one that singles out a specific subject matter for differential treatment.  *Reed*, 576 U.S. at 157.  In contrast, content-neutral time, place, and manner restrictions on speech are permissible so long as they are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).

13

**a**

"A special respect for individual liberty in the home has long been part of our culture and our law" and "that principle has special resonance when the government seeks to constrain a person's ability to speak there." *City of Ladue v. Gilleo*, 512 U.S. 43, 58 (1994).  Plaintiffs wish to have the freedom to gather in their homes to conduct politically-related gatherings.  [R. 3.] Plaintiffs argue that strict scrutiny is the proper standard to apply here because fundamental rights are concerned, and that the Governor cannot meet that high burden.  [R. 3. 19–20.]  While the home is unique and holds a place of special respect, it is not true that the government can never regulate conduct or activities within the home.[7]  Nor is it true that an incidental burdening of speech merits strict scrutiny analysis.  *See Phelps-Roper v. Strickland*, 539 F.3d 356, 361 (6th Cir. 2008).

Here, the Executive Orders in question regulate conduct, not speech, and are content-neutral.  *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). First, the executive orders are very narrow and specific.  Order 2020-968 only limits the number of households and individuals at an *indoor social gathering*.[8]  [Exec. Order. 2020-968.]

Content-neutral time, place, and manner restrictions will be upheld so long as they are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication."  *Perry Educ. Ass'n*, 460 U.S. at 46.  The Supreme Court has instructed that "[t]he principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has

---

[7] For example, laws in cities across the United States regulate occupancy, specify wiring and electricity requirements within the home, or prohibit the detonating of fireworks in certain residential areas without a permit. *See generally* Lexington-Fayette County, Kentucky, Municipal Code (2020).
[8] The Governor points to guidance from both the White House and the CDC pinpointing indoor social gatherings, i.e. house parties, as a significant spreader of Covid-19.  [R. 16 at 8.]

adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791. "[A] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.*

*Ramsek v. Beshear*, discussed above in the context of standing, is also instructive with respect to addressing freedom of speech and freedom of assembly concerns in the Covid-19 context. 468 F. Supp. 3d 904 (2020). In *Ramsek*, plaintiffs wanted to hold an event on Capitol grounds on May 23, 2020, but were prevented from doing so because of an executive order prohibiting "mass gatherings." *Id.* at 908–09. Plaintiffs sought a preliminary injunction against the Governor, arguing that the order violated their freedom of speech and freedom to assemble. *Id.* at 914. This Court found that although the Governor had a significant interest in protecting Kentuckians from Covid-19, the order was not narrowly tailored because it served as a blanket ban on mass gatherings. *Id.* at 918. Because the order was not narrowly tailored, this Court granted plaintiffs' preliminary injunction. *Id.* at 921.

The First Amendment implicates a number of different values, and it can be the case on a particular set of facts that some of those values are respected while others are not. *See, e.g.*, *Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston*, 250 F. Supp. 3d 961, 997 (N.D. Ill. 2003) (holding that plaintiff's free speech and assembly rights had been violated but not plaintiff's free exercise rights). This case identifies policy decisions that are not contrary to the values of freedom of speech and freedom of assembly, but ultimately it may be the case that the decision to close religious schools is contrary to other First Amendment values that at the end of the day control. Here, like in *Ramsek*, the Governor has sufficiently demonstrated a significant government interest in slowing the spread of Covid-19 and protecting the health of

Kentuckians.  [R. 16 at 17.]  Covid-19 is a serious public health concern, and as Dr. Stack

testified, gatherings of more than eight people indoors are substantially related to the public

health crisis.  *Id.* at 18.  However, unlike in *Ramsek*, the orders here, rather than being a "blanket

ban," are narrowly tailored and leave open alternative channels of communication.  *Id.* at 918.

As discussed above, Executive Order 2020-968 only limits indoor social gatherings to no

more than two families and no more than eight people.  [Exec. Order. 2020-968.]  Under the

order, groups of under eight, and no more than two families, are still able to socially gather

indoors, individuals in larger groups are still free to gather outdoors or socially distanced in

public venues, individuals are still free to meet online or by any other electronic medium, and so

long as the gathering is not a "social gathering," (e.g., if it is a business meeting) the gathering is

still permitted even if it takes place inside the home.  Furthermore, the order is only temporary.

Therefore, the order is narrowly tailored and leaves open alternative channels of communication.

**b**

Plaintiffs have not shown a likelihood of success on the merits and therefore cannot

succeed on their free speech, free exercise, and free assembly claims because the executive

orders are content-neutral and are narrowly tailored to serve a significant government interest.

*Ward*, 491 U.S. at 791.  The orders are neither an effort to suppress expression nor are they

aimed at targeting or restricting any particular viewpoint.  Any effect on speech is incidental.

*Phelps-Roper*, 539 F. 3d at 361.  Furthermore, the Governor implemented the orders in

furtherance of the important government interest of slowing the spread of Covid-19.  Therefore,

the Court denies Plaintiffs injunctive relief on freedom of speech and freedom of association and

assembly grounds.

**2**

Plaintiffs also claim that Executive Order 2020-968 violates the right to live together as a family and it specifically implicates the Everson and Duvall Plaintiffs.  [R. 1 at 24.]  Here, Plaintiffs argue that families have a fundamental right to live together, and that the Governor's order criminalizes families larger than eight who stay together.  *Id.*  In response, the Governor argues that the executive order does not limit the activities of single families that have more than eight people within their own household.  [R. 16 at 22–23.]

Plaintiffs' argument on this issue is without merit.  Although the executive order may have been inartfully written, it does not require single families who have more than eight members to split up or prevent them from living together.  The order states: "All indoor social gatherings are limited to a maximum of (2) households and a maximum of eight (8) people."  [Exec. Order 2020-969.]  What the language requires is that indoor social gatherings can only include a maximum of two households *and* up to eight people.  The conjunctive "and" implies that the order requires both factors to be met to trigger enforcement.  Thus, the rational reading of the executive order is that single families, no matter how large, are not prevented from living or dining together by this executive order.

A single family with more than eight members living together would not trigger the first prong of the order, which limits social gatherings to a maximum of two households, and therefore would not fall within the order's purview.  This interpretation of the order is bolstered by Dr. Steven Stack's declaration on December 4, 2020, that "[t]he limitation in place restricts the numbers of individuals from households *that do not live together* from intermingling with one another."  [R. 31 (emphasis added).]  It is clear that neither the plain language nor the intent of the executive order is to split up families that have more than eight members and the Court

17

finds that it is not likely that Plaintiffs would succeed on their violation of the right to live together as a family claim.[9]

### III

Where does all of this leave us?  The governor has broad discretion to make policy choices that restrict our liberty to protect our health and that of others.  But he must be careful not to act too broadly or without compelling reasons when his actions infringe on the liberty protections of the First Amendment.  So, he can quarantine the sick but cannot go too far in limiting the travel of the well.  *Roberts v. Neace*, 457 F. Supp. 3d 595 (E.D. Ky. 2020).  He can limit the size of crowds and how they are dispersed but cannot ban them altogether.  *See Ramsek v. Beshear*, 468 F. Supp. 3d 904 (E.D. Ky. 2020).  He can require safe health practices for churches but cannot ban worship.  *See Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020); *see also Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Tabernacle Baptist Church, Inc. of Nicholasville v. Beshear*, 459 F. Supp. 3d 847 (E.D. Ky. 2020).  And as expressed in this case, he can limit social gatherings in our homes if the limitations are narrow and temporary.

Ultimately, we are left with the healthy tension imagined by the founders, the champions of individual liberty even in a time of crisis.  In a world that seems chaotic and unmoored, those founding principles serve as an anchor; one that holds us in place.  And it will continue to endure.

---

[9] Plaintiffs final argument, a violation of Substantive Due Process for the Everson and Duvall Plaintiffs is tied directly to this claim.  At the hearing, counsel for Plaintiffs admitted that if this Court agreed with the Governor that the violation of the right to live together as a family was not implicated here, then the Substantive Due Process claim was no longer implicated.  Accordingly, the Court holds for the purposes of this preliminary injunction that Plaintiffs are not likely to succeed on the merits on their Substantive Due Process claim.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that

Plaintiffs' Emergency Motion for Preliminary Injunction **[R. 3]** is **DENIED**.

This the 11th day of December, 2020.

Gregory F. Van Tatenhove
United States District Judge